GREENBERG, Judge,
dissenting:
I dissent. The majority’s application of 38 U.S.C. § 1151 is unduly narrow and withdraws necessary protections from a rapidly growing class of veterans.
The Board determined that the appellant was not eligible for benefits based on his phrenic nerve paralysis because that disability was not “caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary, either by a Department employee or in a Department facility as defined in section 1701(3)(A) of this title.” 38 U.S.C. § 1151(a)(1). The majority holds that the Board did not err in its reasoning, because “section 1151 does not extend to the ‘remote consequences’ of VA medical treatment.”[9]
When a veteran’s doctor recommends a course of treatment, it is not a remote consequence of that recommendation for the veteran to pursue it. The appellant’s uncontroverted testimony at his Board hearing is dispositive: when he went to the VA medical center with questions regarding the MAZE procedure, his treating physician, Dr. Rottman,[10] specifically “recommended that I have the procedure because of my age. [Dr. Rottman] thought I could handle it a lot better than somebody at the age of seventy.” R. at 479 (emphasis added). The doctor did not, as the majority suggests, merely perform the ad *415 ministrative task of notifying the appellant of local medical institutions, without endorsing any procedure or medical provider. The record indicates the appellant went to his doctor for medical advice, the doctor recommended that the appellant undergo the MAZE procedure, and the appellant consequently had it performed, resulting in his phrenic nerve injury. The connection between the doctor’s recommendation and the performance of the procedure here is hardly attenuated.
I am further concerned that the majority endorses absolving VA and its physicians of any duty to warn claimants when a medical recommendation jeopardizes eligibility for section 1151 benefits. Irrespective of due process, it is inequitable for the appellant to be induced, through a VA doctor’s medical recommendation, to waive his eligibility for section 1151 benefits without informed consent as to that waiver. The Court should take heed of the American Medical Association’s recognition that “[i]f a physician knows that a patient’s health care plan or other agreement does not cover referral to a non-contracting medical specialist or to a facility that the physician believes to be in the patient’s best interest, the physician should so inform the patient to permit the patient to decide whether to accept the outside referral.” Code of Medical Ethics Opinion 8.132 (Am. Med. Ass’n 2007). VA’s provision of medical care helps fulfill a promise to our nation’s veterans, but it must be implied in that promise that VA will not accept, much less impel, unknowing waiver. This promise is similar to those implied in all contracts. See, e.g., Wood v. Duff-Gordon, 222 N.Y. 88, 91, 118 N.E. 214 (1917) (Cardozo, J.) (“The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal.”). As a matter of equity, the Court should at least hold that a veteran cannot lose section 1151 eligibility when he or she has followed a VA medical recommendation and was never properly informed of the possible consequences.
Permitting such a remedy for veterans is necessary in light of recent developments expanding the provision of care to veterans by non-VA facilities. See, e.g., Pub.L. No. 113-146, § 101(a)(1)(A), (B) (2014) (“The Veterans Access, Choice, and Accountability Act of 2014”). The Court should not reduce the reach of the protective benefits of section 1151 just as Congress increases the number of veterans who will need them. I cannot join a holding that frustrates the veteran-friendly intent of Congress. See Hayburn's Case, 2 U.S. (2 Dall.) 409, 410 n. *, 1 L.Ed. 436 (1792) (“[T]he objects of this act are exceedingly benevolent, and do real honor to the humanity and justice of Congress.”).

. The majority accurately describes the Supreme Court's holding in Brown v. Gardner, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994), that at the time of the decision, 38 U.S.C. § 1151 lacked a requirement that additional disability be the result of VA carelessness, negligence, lack of proper skill, error in judgment, or similar instance of indicated fault. The majority also correctly states that Congress amended section 1151 in 1996 and added the requirement that disability be proximately caused by VA fault or an event not reasonably foreseeable. That fault requirement is not before the Court; the appellant's eligibility for benefits, governed by the first clause of § 1151(a)(1), is in question, but his entitlement to those benefits, governed by the remainder pf § 1151 (a), including subsections (A), (B), and (2), has not yet been considered by the Court or even the Board.

. In an August 10, 2013, letter to VA, the appellant states:
Records show that in 1998, Dr. Crocker, (Knoxville VA outpatient facility) referred me to Nashville VA Cardiology, stating that the Nashville VA has some of the best cardiologist[s] in the nation and that I should have them check me out. I agreed to the referral and have been under the care of these cardiologists ever since. I started seeing Dr, Rottman in 1998 for my atrial fib[rillation]. In 1999 an attempt was made to do an ablation at the VA in Nashville. This procedure was unsuccessful at which time a month later, a pacemaker was installed to help with my problem. Records show in 2005 that the pacemaker was defective and the generator was replaced. Then in 2007 this new procedure (Mini Maze) was available and it was then discussed with me to attempt this procedure to correct the atrial fib,
R. at 96. It does not appear from the record that, in his 9 years of treating the appellant prior to 2007, Dr. Rottman had ever recommended a procedure that required the appellant to seek care at a non-VA institution.